UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR WILLIS,<br><br>                          Plaintiff,<br><br>  v.<br><br>SCORPIO MUSIC (BLACK SCORPIO) S.A., CAN'T STOP PRODUCTIONS, INC., AND HENRI BELOLO,<br><br>                          Defendants. | Case No.:  15cv1078 BTM(RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

Defendants Scorpio Music ("Scorpio"), Henri Belolo ("Belolo"), and Can't Stop Productions, Inc. ("CSP"), have filed motions to dismiss the Complaint.  For the reasons discussed below, Defendants' motions to dismiss are **GRANTED**.

## I.  BACKGROUND

In a prior lawsuit, <u>Scorpio Music S.A. v. Willis</u>, Case No. 11cv1557 BTM(RBB), Scorpio and CSP sought a judicial determination regarding the percentage of copyrights to 24 compositions ("24 Disputed Works") that Victor Willis was entitled to recover upon termination of his grants of copyright.  Willis filed a counterclaim for a declaratory judgment that Belolo did not contribute to the

authorship of the lyrics or the music of the 24 Disputed Works and that Willis was entitled to recapture 50% of the copyright interests in each of those works.  (Willis did not dispute that Jacque Morali composed the music to these works.)

After a jury trial in February 2015, the Court issued a judgment that decreed that Belolo is not a joint author of 13 of the 24 Disputed Works (the "13 Compositions"), including "YMCA," and that Willis has recaptured 50% of the copyrights in those 13 works.

On May 13, 2015, Willis commenced this action.  Willis alleges that all financial and business decisions of CSP and its wholly-owned publishing division, Can't Stop Music ("CSM") were solely made by Belolo.  (Compl. ¶ 23.)  According to Willis, Belolo caused CSP/CSM to utilize a form contract that denominated songwriters that assigned their works to CSP/CSM as "adapters," even though such songwriters routinely created original music and lyrics that were not based upon any previously existing work.  (Compl. ¶¶ 28-29.) Belolo also allegedly caused CSP/CSM to enter into a sub-publishing agreement with Scorpio (the "Scorpio Sub-Publishing Agreement"), under which Scorpio licensed allegedly original French songs to CSP/CSM for CSP/CSM to create English language "adaptations" of the alleged French songs.  (Compl. ¶¶ 23, 39.)  Willis alleges that Belolo engaged in these actions to create a foundation for Belolo's knowingly false claim to authorship of the lyrics of purported "Foreign Works" referred to in the form

2

1   contracts, including the 13 Compositions.  (Compl. ¶ 30.)

2        Belolo, by and through CSP, filed in the United States Copyright Office

3   registrations for each of the 13 Compositions.  (Compl. ¶ 40.)  The Registrations

4   identify Belolo as a co-author of the lyrics.  (Compl. ¶ 43.)

5        Willis claims that by falsely claiming authorship, Belolo effectively obtained

6   for himself a 50% share of royalties for all usages of the musical compositions

7   governed by the form contract.  (Compl. ¶ 31.)  Belolo, by and through CSP/CSM

8   caused registrations of the 13 Compositions with SACEM (the French rights

9   organization that administers the collection and distribution of royalties for uses of

10  musical compositions), which has remitted to Belolo a 50% share of royalties

11  pursuant to its policy of remitting a 50% portion of royalties to the author of the

12  underlying original language lyrics for all territories around the world except the

13  United States.  (Compl. ¶¶ 35-36.)

14       Belolo also caused registrations of the 13 Compositions with BMI, the

15  American performing rights organization that administers the collection and

16  distribution of royalties for uses of musical compositions in the United States.

17  (Compl.  ¶ 37.)  Based on such registrations, BMI has remitted to Belolo a 25%

18  share of nondramatic performance royalties pursuant to its policy of remitting

19  royalties to the author of the underlying original language lyrics.  (Compl. ¶ 38.)

20       Willis alleges that as a result of his fraudulent conduct, Belolo has advanced

3

15cv1078 BTM(RBB)

his own self-interest to the detriment of Willis and has obtained substantial gains and advantages to which he is not entitled.  (Compl. ¶ 40.)  Accordingly, Willis asserts the following claims against Defendants: (1) unjust enrichment (against Belolo); (2) conversion (against Belolo); (3) misappropriation (against Belolo), and (4) fraud (against all Defendants).

The Complaint also asserts claims based on allegedly unauthorized dramatic "grand rights" performances of the 13 Compositions, 20 additional compositions, and "Macho Man," by Sixuvus, Ltd.  ("Sixuvus").  According to the Complaint, during the three years prior to the commencement of this action, Sixuvus, an entity dominated and controlled by Belolo and CSP, presented grand rights public performances of the songs at issue through the group then performing under the name "Village People." (Compl. ¶ 52.)  Willis alleges that CSP authorized third parties including Sixuvus to present the dramatic performances on a royalty-free license basis, charging only for the use of the Village People trademark.   (Compl. ¶ 59.)  CSP has never reported or paid to Willis proceeds from the dramatic performances.  (Compl. ¶ 60.)

Willis asserts the following claims in connection with the dramatic grand rights performances:  (1) vicarious copyright infringement (against Belolo); and (2) breach of fiduciary duty (against CSP).

1

## II. **DISCUSSION**

2    A. Claims Based on Belolo's False Claim of Authorship

3        Willis's first four causes of action (unjust enrichment, conversion,

4    misappropriation, and fraud) are based on Willis's allegations that Belolo, through

5    CSP/CSM, carried out a scheme that allowed Belolo to falsely claim to be an author

6    of the lyrics of the 13 Compositions and thereby obtain credit and royalties, to

7    which he was not entitled, in connection with the exploitation of the works.  These

8    claims are barred by the doctrine of res judicata because they could have been

9    brought in the prior action.

10       The doctrine of res judicata "bars relitigation of all grounds of recovery that

11   were asserted, or could have been asserted, in a previous action between the

12   parties, where the previous action was resolved on the merits."  United States ex

13   rel. Barajas v. Northrop Corp., 147 F.3d 905, 909 (9th Cir. 1998).  "It is immaterial

14   whether the claims asserted subsequent to the judgment were actually pursued in

15   the action that led to the judgment; rather, the relevant inquiry is whether they could

16   have been brought."  Id.

17       There are three elements to a successful res judicata defense:  (1) an identity

18   of claims; (2) a final judgment on the merits; and (3) privity between the parties.

19   United States v. Liquidators of European Federal Credit Bank, 630 F.3d 1139,

20   1150 (9th Cir. 2011).  There was a final judgment on the merits in the prior case

15cv1078 BTM(RBB)

1  and the parties in that case and this case are the same.

2         Therefore, the pivotal question is whether there is "an identity of claims."  In

3  deciding the identity of claims, the Ninth Circuit has applied four criteria:

4         (1) whether rights or interests established in the prior judgment would
          be destroyed or impaired by prosecution of the second action; (2)
5         whether substantially the same evidence is presented in the two
          actions; (3) whether the two suits involve infringement of the same
6         right; and (4) whether the two suits arise out of the same transactional
          nucleus of facts.
7
8  Constantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)

9  (quoting Harris v. Jacobs, 621 F.2d 341,434 (9th Cir. 1980)).  "The fourth criterion

10 – the same transactional nucleus of facts – is the most important."  Liquidators,

11 630 F.3d at 1151.  Accordingly, "[n]ewly articulated claims based on the same

12 nucleus of facts may still be subject to a res judicata finding if the claims could

13 have been brought in the earlier action."  Tahoe-Sierra Pres. Council, Inc. v. Tahoe

14 Reg'l Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003).

15        Willis's first through fourth causes of action are based on the same

16 transactional nucleus of facts as his counterclaim in the prior action.  Willis's

17 counterclaim included allegations that are substantially similar to those alleged in

18 his current Complaint regarding Belolo causing CSP/CSM to utilize the form

19 contract with songwriters like Willis and causing CSP/CSM to enter into the Scorpio

20 Sub-Publishing Agreement so that Belolo could claim to be an author of lyrics of

   purported "Foreign Works" (including the 13 Compositions) and obtain royalties

                                            6

1  from SACEM and BMI. (Counterclaim [Doc. 35] in Case No. 11cv1557 at ¶¶ 79-
2  92.)

3          Although Willis's counterclaim did not seek recovery for pre-termination
4  royalties obtained by Belolo based on his alleged authorship of the works in
5  dispute, Willis clearly could have brought such claims at that time.  Willis chose to
6  limit his counterclaim to the issue of recaptured copyright ownership and post-
7  termination income in connection therewith.

8          Willis argues that Defendants should be judicially estopped from arguing res
9  judicata because Defendants argued in the prior action that the only damages
10  available to Willis were post-termination damages.  However, Defendants argued
11  that Willis's damages were limited because Willis's counterclaim did not assert any
12  claims for damages relating to pre-termination royalties collected by Belolo.
13  Defendants' current res judicata argument is not inconsistent with their prior
14  position that the judgment should not include pre-termination monetary relief.
15  Thus, judicial estoppel does not preclude Defendants' res judicata defense.

16          Willis's first through fourth causes of action are barred by the doctrine of res
17  judicata.  Therefore, the motions to dismiss are granted as to these causes of
18  action.

19

20  B.  Vicarious Copyright Infringement Claim

7

15cv1078 BTM(RBB)

In his fifth cause of action, Willis alleges that Belolo is vicariously liable for copyright infringement committed by Sixuvus. This claim fails because the factual allegations fail to establish that any infringement occurred.

One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 912, 930 (2005). Here, however, there was no underlying infringement because CSP granted Sixuvus a license for dramatic performances of the compositions at issue. (Compl. ¶¶ 58-59.) According to Willis, "CSP has the exclusive rights to license Scorpio's copyright interest in the composition in the United States. . . . CSP has the exclusive rights to commercially exploit the subject copyright interests in the United States . . . ." (Opp. at 17:26-18:7.)

A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright. Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984). Similarly, someone who has been granted rights by a co-owner of a copyright has a valid defense to an infringement action brought by another co-owner. Batiste v. Island Records, Inc., 179 F.3d 217, 223-224 (5th Cir. 1999).

Based on the facts before the Court, there was no underlying infringement by Sixuvus. Therefore, Willis's vicarious infringement claim fails.

C. Breach of Fiduciary Duty

8

1    In his sixth cause of action, Willis alleges that CSP breached its fiduciary

2    duty to Willis to maximize the value and financial return of the subject

3    compositions. (Compl. ¶ 92.) Willis contends that CSP breached its fiduciary duty

4    by granting a royalty-free license for dramatic performances. (Compl. ¶ 93.)

5    Willis's claim for breach of fiduciary duty fails because it does not appear that

6    CSP owed a fiduciary duty toward Willis.   It is true that a co-owner of a copyright

7    must account to other co-owners for profits earned from licensing or using the

8    copyright. [1] <u>Oddo v. Ries</u>, 743 F.2d 630, 633 (9th Cir. 1984). But courts have

9    rejected the proposition that a duty to account to a co-owner is tantamount to owing

10    a fiduciary duty. <u>See</u> <u>Brian Jonestown Massacre v. Davies</u>, 2014 WL 4076549, at

11    * 5 (N.D. Cal. Aug. 18, 2014) (dismissing breach of fiduciary duty claim brought by

12    one co-author against another); <u>Margo v. Weiss</u>, 1998 WL 2558, at * 9 (S.D.N.Y.

13    1998) (rejecting proposition that co-authors owe fiduciary duties to one another –

14    "[I]t appears that, with limited exceptions not applicable here, the only duty that

15    exists between co-authors is the duty to account for profits.").

16    Accordingly, the Court grants the motions to dismiss as to Willis's breach of

---

19    [1] It is actually unclear whether CSP owes a duty of accounting to Willis. A licensee, as
opposed to a transferee, "has no duty to account to the joint owners of a work other than to the
particular joint owner who is his licensor." 1 <u>Nimmer on Copyright</u> § 6.12 [C][3]. A grant
20    executed by less than all of the joint owners of a copyright is necessarily non-exclusive, and a
non-exclusive grant is not regarded as a "transfer," but only a "license." <u>Id.</u>

9

15cv1078 BTM(RBB)

1 | fiduciary duty claim.

2 |

3 | D.  Personal Jurisdiction over Belolo

4 |        In his motion, Belolo also argues that the Court lacks personal jurisdiction

5 | over him.  The Court denies without prejudice Belolo's motion to dismiss for lack

6 | of personal jurisdiction.  If the Court had not dismissed Plaintiff's claims for failure

7 | to state a claim, the Court would have allowed Plaintiff to conduct jurisdictional

8 | discovery.  See Laub v. U.S. Dept. of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003)

9 | (explaining that jurisdictional discovery should be granted when "the jurisdictional

10 | facts are contested or more facts are needed.")   Further discovery regarding

11 | Willis's claim that Scorpio and CSP are alter egos of Belolo "might well"

12 | demonstrate facts sufficient to constitute a basis for jurisdiction.  Harris Rutsky &

13 | Co. Ins. Serv. v. Bell & Clements, 328 F.3d 1122, 1135 (9th Cir. 2003).

14 | //

15 | //

16 | //

17 | //

18 | //

19 | //

20 | //

10

1

## III.  CONCLUSION

2         For the reasons discussed above, Defendants' motions to dismiss [Docs. 6

3    and 11] are **GRANTED**.  Plaintiff's Complaint is **DISMISSED**.  The Court grants

4    Plaintiff leave to file an amended complaint.  If Plaintiff chooses to do so, the

5    amended complaint must be filed within 30 days of the entry of this Order.

6    **IT IS SO ORDERED.**

7     Dated:  January 19, 2016

8                                                      Barry Ted Moskowitz, Chief Judge
                                                       United States District Court
9

10

11

12

13

14

15

16

17

18

19

20

15cv1078 BTM(RBB)