UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR WILLIS,<br><br>        Plaintiff,<br><br>v.<br><br>SCORPIO MUSIC (BLACK SCORPIO) S.A., CAN'T STOP PRODUCTIONS, INC., and HENRI BELOLO,<br><br>        DefendantS. | Case No.:  15cv1078 BTM(RBB)<br><br>**ORDER DENYING MOTION TO DISMISS** |

Defendants Can't stop Productions, Inc., Scorpio Music (Black Scorpio), S.A. and Henri Belolo have filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC").  For the reasons discussed below, Defendants' motion is **DENIED**.

## I. BACKGROUND

In a prior lawsuit, Scorpio Music S.A. v. Willis, Case No. 11cv1557 BTM(RBB), Scorpio Music ("Scorpio") and Can't Stop Productions, Inc. ("CSP") sought a judicial determination regarding the percentage of copyrights to 24 compositions ("24 Disputed Works") that Victor Willis was entitled to recover upon termination of his grants of copyright.  Willis filed a counterclaim for a declaratory

judgment that Henri Belolo ("Belolo") did not contribute to the authorship of the lyrics or the music of the 24 Disputed Works and that Willis was entitled to recapture 50% of the copyright interests in each of those works. (Willis did not dispute that Jacques Morali composed the music to these works.)

After a jury trial in February 2015, the Court issued a judgment that decreed that: (1) Belolo is not a joint author of 13 of the 24 Disputed Works (the "13 Compositions"), including "YMCA," and that Willis has recaptured 50% of the copyrights in those 13 works; and (2) Willis has recaptured 33% of the copyrights in 20 additional compositions, including 11 of the 24 Disputed Works (the "20 Additional Compositions").

On May 13, 2015, Willis commenced this action. His first four causes of action were based on allegations that Belolo made false claims to authorship of the 13 Compositions, allowing Belolo to collect royalties in connection with uses of those compositions. Willis also asserted claims of vicarious copyright infringement against Belolo and breach of fiduciary duty against CSP. These claims alleged that Belolo and CSP allowed Sixuvus, Ltd. ("Sixuvus") to present grand rights public performances of some of the 13 Compositions, 20 Additional Compositions, and "Macho Man," and that Willis was never paid proceeds from the dramatic performances.

In an order filed on January 19, 2016, the Court granted a motion to dismiss filed by Defendants. The Court dismissed the first four causes of action as barred by the doctrine of res judicata. The Court found that these claims were based on the same transactional nucleus of facts as Willis's counterclaim in <u>Scorpio Music S.A. v. Willis</u>, Case No. 11cv1557 BTM(RBB). The Court dismissed the vicarious copyright infringement claim because the Complaint alleged that CSP had granted Sixuvus a license for dramatic performances of the compositions at issue. The Court also dismissed the breach of fiduciary duty claim because co-owners of copyrights do not owe each other a fiduciary duty.

On February 18, 2016, Willis filed his FAC.  The FAC asserts two claims:  (1) vicarious copyright infringement for unauthorized dramatic public performance (against Belolo); and (2) conversion (against CSP and Belolo).  The FAC alleges that Sixuvus, which was controlled by Belolo and CSP, made dramatic "grand rights" performances ("Dramatic Performances") of at least three of the 13 Compositions, including "YMCA" and "Hot Cop," at least two of the 20 Additional Compositions, including "In the Navy" and "Go West," and "Macho Man."  (FAC ¶ 24.)  According to the FAC, CSP did not in fact grant Sixuvus a license to present dramatic performances of these compositions, and CSP and Belolo failed to account to Willis for any portion of the monies received by them from Sixuvus for the Dramatic Performances.

## II. DISCUSSION

Defendants move to dismiss the FAC for failure to state a claim.  As discussed below, the Court finds that Willis has pled sufficient facts establishing a plausible claim for vicarious copyright infringement and conversion.

A. <u>Vicarious Copyright Infringement</u>

    1. <u>Sham Amendment</u>

Defendants argue that the FAC is a sham amendment because the original complaint alleged:  "During the three years prior to the commencement of this Action, Defendant CSP authorized third parties, including, without limitation, Sixuvus, to present the Dramatic Performances on a royalty-free license basis." (Compl. ¶ 57.)  The FAC, in contrast, alleges, "Sixuvus failed to seek, and Defendants did not grant Sixuvus, a grand rights license for live performances for the subject musical compositions."  (FAC ¶ 36.)  Footnote 1 on page 9 of the FAC explains:  "In the initial complaint, it was inadvertently alleged in error that Belolo and/or Can't Stop had in fact issued Sixuvus a license for the use of compositions

for purposes of live performances when, in fact, no such license had been issued."

Under the California law cited by Defendants, "the policy against sham pleading permits the court to take judicial notice of the prior pleadings and requires that the pleader explain the inconsistency." Owens v. Kings Supermarket, 198 Cal. App. 3d 379, 384 (1988). If the pleader fails to explain the inconsistency, "the court may disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint." Id.

Here, Willis claims that due to inadvertence, his original complaint incorrectly stated that CSP had granted a license to Sixuvus to present the Dramatic Performances. This case is unlike the California cases where a plaintiff repeatedly makes a factual assertion in pleadings but then makes a contrary factual assertion in an amended pleading with no explanation. See Owens, 198 Cal. App. 3d at 384 (Plaintiff alleged in two successive complaints that he was injured in the street adjacent to the supermarket and only alleged that he was injured on the defendant's premises after it became apparent that the court did not accept plaintiff's argument that the supermarket's duty extended to the street); Amid v. Hawthorne Community Medical Group, Inc., 212 Cal. App. 3d 1383, 1391 (1989) (Plaintiff alleged in four earlier complaints that there was no express nondisclosure contract term but then, without explanation, alleged an explicit oral contract of nondisclosure).

For now, the Court will accept Willis's explanation of inadvertent mistake and will not treat the FAC as a sham amendment.

2. Res Judicata

Defendants contend that Willis's vicarious infringement claim is barred by the doctrine of res judicata. The Court disagrees.

The doctrine of res judicata "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the

parties, where the previous action was resolved on the merits." United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905, 909 (9th Cir. 1998). "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." Id.

There are three elements to a successful res judicata defense: (1) an identity of claims; (2) a final judgment on the merits; and (3) privity between the parties. United States v. Liquidators of European Federal Credit Bank, 630 F.3d 1139, 1150 (9th Cir. 2011). Four factors are considered in determining an "identity of claims":

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Constantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (quoting Harris v. Jacobs, 621 F.2d 341,434 (9th Cir. 1980)).

"The fourth criterion – the same transactional nucleus of facts – is the most important." Liquidators, 630 F.3d at 1151. Although a plaintiff need not bring every possible claim in an action, "where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring an omitted claim in a subsequent proceeding." Turtle Island Restoration Network v. United States Dept. of State, 673 F.3d 914, 918 (9th Cir. 2012).

Although the prior action involved the same parties and ended in a final judgment on the merits, the Court does not find that there is an identity of claims between the prior action and this action. The prior action concerned a determination of authorship and percentage of copyright interest in the 24 Disputed

Works. The current action concerns grand rights performances of some of the musical compositions that were the subject of the prior suit and the alleged failure of Defendants to compensate Willis or account to him for the Dramatic Performances.

The factual issues raised by this action – whether Sixuvus had a license to engage in dramatic performances of the compositions and whether the performances constitute "grand rights" performances – do not relate to the factual circumstances underlying the prior action. Therefore, the Court concludes that there is no identity of claims and that res judicata does not bar Willis's vicarious infringement claim.

3. Improper Claim by Co-owner

Defendants contend that Willis's vicarious infringement claim is an improper claim by one co-owner of a copyright against another. But this is not necessarily so.

One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 912, 930 (2005). To state a claim for vicarious copyright infringement, the plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct; and (2) a direct financial interest in the infringing activity. Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 802 (9th Cir. 2007).

It is well established that a co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright. Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984). It is less clear whether a co-owner can be liable to another co-owner for *vicarious* infringement, but the Court is inclined to conclude that the same principles precluding co-owner liability for direct infringement also preclude liability for vicarious infringement. See Marino v. Usher, 2014 WL 2116114, at *

13 (E.D. Pa. May 21, 2014) (reasoning that the defendant appeared to have meritorious defenses to the plaintiff's claims for direct, contributory, and vicarious copyright infringement because defendant was a co-owner).

Willis alleges that Belolo (who assigned his copyright interests to Scorpio and is no longer a co-owner of the copyrights) aided, abetted, assisted, and enabled Sixuvus in its infringing activities. (FAC ¶ 46.) Willis argues that because Belolo is not himself a co-owner, he can be held liable for vicarious infringement.

The Court is not entirely convinced that Belolo can be held liable for vicarious infringement with respect to compositions in which Scorpio has a copyright interest. It appears that CSP is Scorpio's exclusive licensee of the copyrights in the territory of the United States. (FAC ¶ 18.) Furthermore, Willis alleges that Belolo is the alter ego of CSP in that he is the managing and sole director of CSP and the sole shareholder of CSP. (FAC ¶ 10.) To the extent Belolo is acting as CSP or on behalf of CSP, he stands in the shoes of a co-owner of the copyrights.

However, the Court need not resolve this issue at this time because Willis also claims vicarious infringement of some of the 13 Compositions. The jury in the prior action found that Belolo was not a co-author of the 13 Compositions. Therefore, Willis's claim of vicarious infringement with respect to the 13 Compositions does not appear to be an improper claim by a co-owner against another co-owner.[1]

4. <u>Grand Rights Performance</u>

Defendants contend that no "grand rights" license was required for the Dramatic Performances at issue. The Court denies Defendants' motion to dismiss on this ground.

---

[1] It is unclear to the Court whether Scorpio owns any interest in the copyrights to the 13 Compositions through Jacques Morali or otherwise.

Grand rights licenses are required for "dramatic performances." See 3 Nimmer on Copyright § 10.10[E]. A performance of a musical composition is "dramatic" if it "aids in telling a story." Id. Dramatic performances may be accompanied by dialogue, scenery, and costumes, but it is possible for performances to be devoid of dialogue, scenery, and costumes and still be "dramatic." Id. See also Robert Stigwood Group Ltd. v. Sperber, 457 F.2d 50, 55 (2d Cir. 1972) (reasoning that performance of 20 of 23 songs from Jesus Christ Superstar in the identical sequence as the rock opera preserved the story line of the original play and rendered the performance dramatic even though there were no scenery or costumes).

Defendants argue that there is no plot or storyline apparent in any of the songs and that the songs cannot be combined to tell a story. Willis counters that "the performances at issue are plot-based with characters, costumes, choreography, dialogue, and the use of Plaintiff's Compositions aids in the telling of the story." (Opp. at 10:18-21.)

Based on the record before it, the Court cannot determine whether the Dramatic Performances actually are "dramatic" in nature such that a grand rights license is necessary. It would be more appropriate for Defendants to raise this argument on a motion for summary judgment.

B. Conversion

Defendants move to dismiss Willis's claim for conversion on the grounds of res judicata and Willis's alleged failure to establish that a grand rights license is necessary. For the reasons discussed above, Defendants' res judicata and grand rights license arguments do not warrant dismissal.

Defendants also assert that CSP, as an exclusive licensee, owes no duty to

account to Willis.[2] However, at this time, the Court declines to reach the issue of what type of licensing arrangement, if any, existed between CSP/Belolo and Sixuvus, and the legal effect of such an arrangement.

### III.  CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is **DENIED**. Defendants shall file an Answer to the FAC within 20 days of the entry of this Order.

Dated:  June 24, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court

---

[2] In footnote 1 of the Court's prior order granting Defendants' motion to dismiss [Doc. 20], the Court noted:

> It is actually unclear whether CSP owes a duty of accounting to Willis.  A licensee, as opposed to a transferee, "has no duty to account to the joint owners of a work other than to the particular joint owner who is his licensor." 1 Nimmer on Copyright § 6.12 [C][3]. A grant executed by less than all of the joint owners of a copyright is necessarily non-exclusive, and a non-exclusive grant is not regarded as a "transfer," but only a "license." Id.